Filed 7/7/16  Libman v. Bondarev Chiropractic CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MICHAEL LIBMAN, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> BONDAREV CHIROPRACTIC, INC. et al., <br><br> Defendants and Appellants. | B259498 <br><br> (Los Angeles County Super. Ct. No. BC518648) |

APPEAL from an order of the Superior Court of Los Angeles County. Gregory Alarcon, Judge.  Affirmed.


Krishel Law Offices, Daniel L. Krishel, for Defendants and Appellants.


No appearance for Plaintiff and Respondent.


* * * * * *

A lawyer referred two clients to a chiropractor. After the clients' lawsuit netted a small recovery and the clients did not pay their medical bills, the chiropractor sued the lawyer in small claims court for those unpaid bills. The chiropractor prevailed. The lawyer then sued the chiropractor civilly for improper debt collection. The trial court eventually dismissed the lawyer's lawsuit on demurrer, but denied the chiropractor's request for statutory attorney's fees after finding that the lawyer's action "was not prosecuted in bad faith." The chiropractor challenges this ruling on appeal. We conclude substantial evidence supports the court's finding and that the denial of attorney's fees was not an abuse of discretion. We accordingly affirm.

## FACTS AND PROCEDURAL BACKGROUND

In early 2007, Michael Libman (lawyer) agreed to represent Stephanie Thomas and Audrey Ewells (collectively, clients) on a contingency basis in their lawsuit for injuries arising out of an automobile accident. Clients signed a contract with Bondarev Chiropractic, Inc. (chiropractor) in which they (1) agreed to be responsible for all chiropractic bills, (2) authorized lawyer to pay any chiropractic bills for them and deduct those amounts from any eventual recovery, and (3) granted the chiropractor "a lien . . . against any and all proceeds of any settlement, [judgment] or verdict which may be paid to" lawyer or to themselves. Clients incurred approximately $9,175 in chiropractic services.

Clients' lawsuit proceeded to arbitration, and they recovered $100,000. Of that amount, lawyer was entitled to a 40 percent contingency fee and his costs of $76,160.05. This left no positive recovery for clients or for any of clients' medical bills.

In August 2012, Anatoly Bondarev (Bondarev) sued lawyer in small claims court. The court ruled for lawyer because Bondarev, in his individual capacity, was not a party to any contract and thus lacked standing to sue. In November 2012, chiropractor sued lawyer in small claims court and was awarded $9,260. Attorney appealed. After a de novo trial, the small claims court reduced the award to $5,085.

In August 2013, lawyer sued chiropractor and Bondarev for improper debt collection—namely, for collecting *clients'* debt from him when he was not a guarantor.

2

Specifically, lawyer alleged (1) violations of the Fair Debt Collection Practices Act (FDCPA) (15 U.S.C. § 1692 et seq.), (2) violations of the Rosenthal Fair Debt Collection Practices Act (Rosenthal Act) (Civ. Code, § 1788 et seq.), (3) violations of the Consumer Credit Reporting Agencies Act (Civ. Code, § 1785.1 et seq.), (4) breach of oral contract, (5) promise without intention to perform, (6) fraud, (7) intentional infliction of emotional distress, and (8) declaratory relief.

In February 2014, the trial court granted chiropractor's motion for judgment on the pleadings. The court reasoned that lawyer did not state a claim for violation of the FDCPA or the Rosenthal Act because lawyer's debt to chiropractor was not incurred for "personal, family, or household purposes." (15 U.S.C. § 1692a(5); Civ. Code, § 1788.2, subds. (b), (e) & (f).) The court also noted that chiropractor was not a "debt collector" within the meaning of the FDCPA. (15 U.S.C. § 1692a(6).) The court further concluded that the Consumer Credit Reporting Agencies Act applied only to credit reporting bureaus.[1] The court granted lawyer 20 days to file an amended complaint.

In March 2014, lawyer filed a first amended complaint. Six of the eight claims alleged in this complaint were the same as in the original complaint; lawyer dropped his claims under the FDCPA and the Consumer Credit Reporting Agencies Act.

In August 2014, the trial court sustained chiropractor's demurrer to lawyer's first amended complaint without leave to amend. As to the Rosenthal Act claim, the court reasoned that lawyer might not have standing to assert any violation of the Act as to the "debts of [his] law clients for chiropractic services." The court conceded that it found "no governing authority on point," but opted to follow federal decisional authority it found persuasive.

Chiropractor then moved to recover $14,102 in attorney's fees under the FDCPA, the Rosenthal Act, and the Consumer Credit Reporting Agencies Act. The trial court

---

**1** We do not discuss the trial court's reasons for dismissing lawyer's remaining claims because they cannot support a request for attorney's fees.

denied the motion, finding that lawyer's "[c]omplaint was not prosecuted in bad faith" and involved "some first-impression issues[] and splits of authority."

Lawyer filed a notice of appeal, as did chiropractor. Lawyer's appeal was subsequently dismissed.

## DISCUSSION

Although "each party to a lawsuit must ordinarily pay his or her own attorney fees" (*Tract 19051 Homeowners Assn. v. Kemp* (2015) 60 Cal.4th 1135, 1142), this general rule is not without exception: Liability for the other party's attorney's fees can attach by virtue of contract or, as is relevant here, by statute. (Code Civ. Proc., § 1021.) Three of lawyer's claims rest on statutes that in certain circumstances allow a prevailing defendant to collect its attorney's fees. Attorney's fees may be assessed under the FDCPA if the plaintiff's claim "was brought in bad faith and for the purpose of harassment" (15 U.S.C. § 1692k(a)(3); *Marx v. General Revenue Corp.* (2013) 133 S.Ct. 1166, 1170-1171 [so noting]), and under the Rosenthal Act and the Consumer Credit Reporting Agencies Act if the plaintiff's claim was not prosecuted or brought "in good faith" (Civ. Code, §§ 1785.31, subd. (e) & 1788.30, subd. (c)).

In reviewing an award of attorney's fees under these statutes, the level of scrutiny we apply depends upon what we are examining. If we are reviewing legal questions regarding the meaning of the statutes, our review is de novo (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1213-1214); if we are reviewing the trial court's factual finding regarding bad faith or good faith or regarding the plaintiff's purpose, we ask only whether the record contains "substantial evidence" to support that finding (*Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.* (2010) 188 Cal.App.4th 401, 429); and if we are reviewing the trial court's decision to impose (or not impose) attorney's fees, we look to see whether the court abused its discretion (*Whitley*, at p. 1213; *Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175).

The meaning of the term "bad faith" is well established. "Bad faith" requires more than a showing that the plaintiff's claim lacked merit; instead, it requires a showing that the plaintiff *knew* of the claim's lack of merit and nevertheless decided to press that

4

claim.  (E.g., *Marshall v. Portfolio Recovery Associates, Inc.* (E.D.Pa. 2009) 646 F.Supp.2d 770, 776; *Swat-Fame, Inc. v. Goldstein* (2002) 101 Cal.App.4th 613, 634, overruled on other grounds by *Reid v. Google, Inc.* (2010) 50 Cal.4th 512.)  Such knowledge can be, but need not be, inferred from a claim's "utter[] lack[] [of] merit." (*Dolan v. Buena Engineers, Inc.* (1994) 24 Cal.App.4th 1500, 1505; *Abbett Electric Corp. v. Sullwold* (1987) 193 Cal.App.3d 708, 712-713.)  Because the FDCPA, the Rosenthal Act, and the Consumer Credit Reporting Agencies Act impose liability for attorney's fees upon a plaintiff acting, at a minimum, in "bad faith" (in the FDCPA) or not in "good faith" (in the two state statutes), and because this attorney's fee provision in all three acts ostensibly serves the same goal of "'thwart[ing] efforts of a consumer to abuse the statute and avoid responsibility to pay a legitimate debt' [citation]" (*Marshall*, at p. 776), we will treat "bad faith" and lack of "good faith" as flip sides of the same coin and construe them to have the same meaning.  (See *Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1090-1091 [statutes that "'"relate to the same . . . thing, . . . or have the same purpose or object"'" should be "construed together"].)

Substantial evidence supports the trial court's finding that lawyer did not bring his three statutory claims in "bad faith" or "not in good faith."  As a general matter, the basic premise of lawyer's whole civil action was his assertion that he was not obligated to pay clients' medical bills because he was not their guarantor and because *his* entitlement to attorney's fees had priority over the chiropractor's entitlement to enforcement of its medical liens.  This premise appears to be legally valid.  (See *Gilman v. Dalby* (2009) 176 Cal.App.4th 606, 620 ["the amount recovered by the plaintiff in a personal injury lawsuit always goes first to satisfy the attorney lien for fees and costs before it is used to satisfy medical liens"].)

More specifically, lawyer's claims under the FDCPA and the Rosenthal Act required him to prove, as a minimum, that chiropractor was a "debt collector" attempting to collect a "debt."  (E.g., 15 U.S.C. §§ 1692c(b) & 1692e; Civ Code, § 1788.17 [violations of FDCPA also violate Rosenthal Act].)  Both acts define a "debt" to pertain to transactions made "primarily for personal, family, or household purposes."  (15 U.S.C.

5

§ 1692a(5); Civ. Code, § 1788.2, subds. (e) & (f).) The debt chiropractor was trying to collect was the debt originally incurred by clients when they received chiropractic treatment. Lawyer's argument that this debt was for the "personal . . . purposes" of his clients is thus arguably correct, and is at a minimum plausible. Both acts also limit their reach to "debt collectors." Although the FDCPA defines "debt collector" as persons or entities collecting "debts owed or due or asserted to be owed or due *another*" (15 U.S.C. § 1692a(6), italics added), the Rosenthal Act more broadly defines the term to reach "any person who, in the ordinary course of business, regularly, *on behalf of himself or others*, engages in debt collection" (Civ. Code, § 1788.2, subd. (c), italics added; *Alborzian v. JPMorgan Chase Bank, N.A.* (2015) 235 Cal.App.4th 29, 36, fn. 7 [so noting]). Because chiropractor was seeking to collect its own debt, chiropractor falls outside the FDCPA's definition of "debt collector," but within the Rosenthal Act's definition. Significantly, lawyer dropped his FDCPA claim after the trial court brought the deficiency in that claim to lawyer's attention when granting chiropractor's motion for judgment on the pleadings. Although the court ultimately dismissed lawyer's Rosenthal Act claim for lack of standing, the issue of standing is also a close question. The court followed federal authority indicating that a plaintiff does not have standing to pursue a Rosenthal Act claim if she is not herself a debtor (*Sanchez v. Client Services, Inc.* (N.D.Cal. 2007) 520 F.Supp.2d 1149, 1155, fn. 3), but lawyer here arguably was a debtor because clients' contract with chiropractor granted chiropractor a lien "against any and all proceeds of any settlement, [judgment] or verdict which may be paid to" clients *or lawyer*. Indeed, both chiropractor and the small claims court thought clients' debt was lawyer's to pay; this means that lawyer had a good argument in support of his own standing under *Sanchez*, and thus was not pursuing his Rosenthal Act claim in bad faith.

Lawyer's claim under the Consumer Credit Reporting Agencies Act was also not brought in bad faith. To be sure, many of that statute's provisions regulate the conduct of the reporting agencies themselves. (E.g., Civ. Code, §§ 1785.10-1785.19.5.) But this statute also regulates the conduct of third parties (Civ. Code, §§ 1785.20-1785.26), and prohibits them from "furnish[ing] information on a specific transaction or experience to

6

any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." (Civ. Code, § 1785.25, subd. (a).) Because lawyer grounded his claim under the statute on those provisions aimed at chiropractor as a third party furnishing inaccurate information, he also had a good faith basis for bringing this claim.

Chiropractor raises one further argument—namely, that we should infer the lawyer's bad faith because he filed his civil suit only after losing in small claims court. But lawyer did not suffer any monetary harm until that time; although lawyer may have been able to seek statutory damages earlier, he could not have brought his fraud or contract claims until he was actually harmed. (See, e.g., *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821 [no breach of contract claim without damages]; *Hunter v. Up-Right, Inc.* (1993) 6 Cal.4th 1174, 1184 [no fraud claim without damages].)

Because substantial evidence supports the trial court's finding that lawyer's statutory claims were not brought or prosecuted in bad faith, the court did not abuse its discretion in denying chiropractor's motion for attorney's fees.

## DISPOSITION

The order is affirmed. Lawyer is entitled to his costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.</u>

_____, J.
                                        HOFFSTADT

We concur:

_____, P.J.
BOREN

_____, J.
CHAVEZ